## In Re Anonymous No. 32 D.B. 80

Disciplinary Board Docket no. 32 D.B. 80.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

CURRAN, *Board Member*, November 24, 1982
Pursuant to Pennsylvania Rule of Disciplinary
Enforcement 208(d), the Disciplinary Board of the
Supreme Court of Pennsylvania (board) submits its
findings and recommendations to your honorable
court with respect to the above-captioned petition
for discipline.

## I. HISTORY OF PROCEEDINGS

The Office of Disciplinary Counsel filed a petition
for discipline against [Respondent], Esq. on May
28, 1980. The petition alleged violations of D.R.
1-102(A)(4)—dealing with conduct involving dis-
honesty, fraud, deceit, or misrepresentation; and
D.R. 6-101(A)(3)—dealing with the neglect of a
legal matter entrusted to an attorney in connection
with the representation of [A], doing business as
"[A] Industries." Respondent filed an answer to the
petition for discipline on August 25, 1980. The par-
ties entered into a stipulation of facts for submis-
sion to the hearing committee (Exhibit 1) and the
hearing was held before hearing committee [    ]
consisting of [    ] on February 12, 1982.

The opinion of the hearing committee was filed
on July 20, 1982. The committee determined that
respondent had violated D.R. 1-102(A)(4), dealing
with the conduct involving dishonesty, fraud, de-
ceit, or misrepresentation; and D.R. 6-101(A)(3)—
dealing with the neglect of a legal matter entrusted
to an attorney. The committee recommended that
respondent be publically censured by the Supreme
Court with probation, under supervision, for a
period of one year.

## II. STATEMENT OF FACTS

[A], a resident of [    ], Pennsylvania, trades and

does business as [A] Industries ("[A] Industries"), which refurbishes steam locomotives for resale. By two checks dated February 9, 1970 and March 4, 1970, [A] paid $3,500 to [B] Salvage Company ("[B]") for the purchase of a steam locomotive (parties Stipulation of Facts, paragraph two, hereinafter Stip.). [B] acknowledged the payment in full but later sold the locomotive to another party. [A] had hoped to realize a profit of $10,000 from the work upon and resale of the steam locomotive. In February, 1972, [A] met with respondent in respondent's office to discuss his claim against [B] (Stip. paragraph three). At that time [A] requested that respondent file suit against [B]. Respondent agreed to represent [A] in this matter.

On February 6, 1972, respondent wrote to [B] to demand delivery of the steam locomotive. Shortly thereafter, respondent received a response from an attorney representing [B] offering a return of [A's] $3,500. This offer [A] rejected stating he wished to have the steam locomotive. In February, 1973, respondent drew a complaint in assumpsit which was signed by [A]. However, this complaint was never filed.

From the time of the signing of the complaint in 1973 until February 8, 1976, [A] attempted on numerous occasions to contact respondent either by stopping in his office or making phone calls. [A] testified that he never received any satisfactory reports of the status of his case when he was able to speak to respondent, which he was able to do a "couple of times a year." [A] commented, "Well, I either got the runaround or they were working on it." On February 3, 1976, respondent wrote to [A] concerning the failure of [A] "To remit certain amounts of money due and owing to our firm." On February 9, 1976, [A] wrote to respondent stating

that he had a very bad year and just couldn't raise enough money to pay respondent's bills. [A] stated "I might also add that if you could do something about the [B] account it sure would help. This has been hanging fire for about three years which certainly seems long enough to get something going." (Office of Disciplinary Counsel, Exhibit "A").

There were no further contacts between [A] and respondent until 1977 when the complainant and his son, [A's son], went to respondent's office without an appointment and finally were able to speak with respondent after waiting for two hours. [A's son], age 43, is manager of a radio station in Sacramento, California. [A] recalled that respondent "admitted he has been negligent in the handling it but he would get to work on it and get something done." [A] also stated that respondent said during the meeting that depositions must be taken in the case and that money was needed to pay for the depositions. [A] stated, "We asked him how much and he said $500." Both [A] and his son testified that the respondent asked for $500 in order to pay for depositions necessary to get the [B] case underway. Respondent differed with this recollection and stated that the $500 was not "in any restricted or conditioned upon taking depositions." Respondent did not tell A and A's son at the time of the June, 1977, meeting that the statute of limitations had run. On June 8, 1978, [A] sent respondent a check for $500. On May 11, 1979, [A] wrote a letter to respondent making reference to the $500 check urging him to take action in the matter and threating to contact the Disciplinary Board if nothing was heard from respondent in 30 days. (Stip. paragraph 11). In June, 1979, respondent's secretary called [A] assuring [A] respondent would "proceed with

the action." On June 29, 1979, [A] wrote to respondent acknowledging the phone call of the respondent's secretary and requested respondent to advise him of the progress of the suit by the end of July, 1979. [A] heard nothing further from respondent and finally filed a complaint with the Disciplinary Board.

## III. DISCUSSION

The board agrees with the conclusion of the hearing committee that respondent has violated the following Disciplinary Rules of the Code of Professionally Responsibility:

(a) D.R. 1-102(A)(4)—dealing with conduct involving dishonesty, fraud, deceit, or misrepresentation.

(b) D.R. 6-101-(A)(3)—dealing with the neglect of a legal matter entrusted to an attorney.

From the record it is clear that respondent undertook the representation of [A] with regard to the claim against [B] in 1972 and that he began to act of behalf of [A] when he wrote [B] on February 6, 1972. A complaint in assumpsit was prepared by respondent and signed by [A] in 1973, but was never filed. Instead of proceeding with the [B] matter diligently, respondent neglected the matter completely, failed to inform his client of the true status of the case, permitted the statute of limitations to lapse, and then after having irretrievably lost the case, misrepresented the status of the matter to his client in order to induce the client to pay $500 for "depositions" which he certainly knew would never be held.

Respondent has never acknowledged any fault in this matter. Although in his answer to the petition

for discipline, he stated that he had undertaken representation of [A] and that a law suit against [B] was imminent, respondent, at the hearing, changed his position stating that [A] misunderstood the nature of the relationship, insisting that he had not undertaken to represent [A] in respect to the [B] matter because [A] owed him money for legal services previously rendered and that [A] had paid no retainer in the [B] matter. The hearing committee found respondent's various positions to be without credibility, and respondent was able to present no evidence indicating that he ever informed [A] that advance payment or retainer would be required.

The only time when respondent did make a demand for payment, [A] responded by providing him with the $500 he requested for "depositions." Respondent contends that this money was due him for past services but he could provide no documentation of this fact.

It must be regarded as significant that the [B] matter is but one of similar instances in which respondent was involved.

The hearing committee noted:

"On October 18, 1977, the Respondent received an informal admonition for violations of Disciplinary Rules 6-101(A)(3) and 9-102(B)(4). He received a second informal admonition on May 23, 1980 for violations of Disciplinary Rule 6-101(A)(3) and 1-102(A)(4), the same rules for which violations have been charged in the instant matter. While the second informal admonition occurred subsequent to the filing of the charges in the [A] case, the previous complaint was filed on or about June 12, 1978, a year prior to the filing of the instant complaint." (H.C. p. 9)

The Disciplinary Board agrees with the Hearing Committee that as private discipline has failed to work any improvement in the conduct of respondent, a more severe form of public discipline is required for the protection of the public. Only because there exists no effective mechanism for meaningful supervision of respondent during a period of probation does the Disciplinary Board feel a period of probation would be inappropriate.

## IV. RECOMMENDATION

For the reasons set forth above, the Disciplinary Board recommends to your honorable court that respondent, [   ], be publicly censured pursuant to Rule 204(3) of the Pennsylvania Rules of Disciplinary Enforcement and that the court direct that all necessary expenses incurred by this board in the investigation and processing of the petition for discipline be borne by and paid for by said respondent. (A statement of such expenses is appended to the report.)

## ORDER

ROBERTS, *C.J.*, And now, January 24, 1983, upon consideration of the recommendation of the Disciplinary Board dated November 24, 1982, it is hereby ordered that [Respondent] is suspended from the Bar of the Commonwealth for a period of one year, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.